# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| PETER DEMETRIADES and ) | |
| MICHELE DEMETRIADES, ) | |
|     Plaintiffs ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | Case No. 1:09cv00025 |
| ) | |
| PAUL DAVID BRYANT JR. and ) | |
| SHARON K. BRYANT, ) | |
|     Defendants ) | |

This matter is before the court on the defendants' Motion To Dismiss, (Docket Item No. 8), filed March 2, 2009. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties. The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following Report And Recommendation.

## *I. Facts*

The plaintiffs and defendants entered into a Land Sales Contract, (Exhibit A to Docket Item No. 3) ("the Contract"), dated July 11, 2003, for the purchase of a commercial building and land. The plaintiffs allege that they intended to purchase property located at 2100 Industrial Boulevard, Bristol, Tennessee. However, the address contained in the Contract, a Quitclaim Deed and closing documents was "2100

-1-

Industrial Park Drive, Bristol, Tennessee," a nonexistent address.[1] The plaintiffs contend that the defendants intentionally sold them a nonexistent property in an effort to defraud them. The Quitclaim Deed was signed by all parties on July 11, 2003, and reverted the property back to the defendants in the event of the plaintiffs' default.[2] The plaintiffs defaulted on the Contract, and the defendants elected that the plaintiffs forfeit the property, as allowed under the terms of the Contract. The Quitclaim Deed was recorded by the defendants on September 20, 2004, at which time the defendants reclaimed the property and informed the plaintiffs that they had to vacate the premises. On December 23, 2004, a Detainer Summons was issued, indicating that a hearing for nonpayment of rent or purchase money, as well as damages to the property, was scheduled for January 6, 2005. (Exhibit F to Docket Item No. 1.) This Detainer Summons was served by the Sheriff on Michele Demetriades on December 28, 2004. The Detainer Summons indicated that written notice to vacate was given to the plaintiffs on September 7, 2004.[3] However, the evidence before the court shows that the plaintiffs still held possession of the property at the time they received the Detainer Summons in December 2004. The court hearing was held on January 6, 2005, at which time possession of 2100 Industrial Boulevard was given to the defendants. Although the Detainer Summons indicates that the plaintiffs were given notice of this hearing, the plaintiffs were not present at this hearing.

---

[1] The court notes that both the Contract and the Quitclaim Deed included a detailed description of the property to be purchased by the plaintiffs, which the plaintiffs do not dispute as inaccurate.

[2] The court notes that, by the terms of the Contract, the plaintiffs agreed to sign this Quitclaim Deed, which would be recorded only in the event that the plaintiffs defaulted under the Contract.

[3] The plaintiffs dispute that they ever received this written notice to vacate.

On August 9, 2005, an Illegal Writ of Possession was placed inside the front glass door of the Industrial Boulevard property, and the plaintiffs were locked out. The plaintiffs thereafter countersued the defendants. On January 12, 2007, the court ordered the plaintiffs to empty the building by a certain date, and a judgment for damages was entered in favor of the defendants in the amount of $75,980.28 for the Industrial Boulevard property. The plaintiffs appealed this decision, but pending their appeal, the defendants sold the 2100 Industrial Boulevard property for $450,000 on January 4, 2008. The appeal was dismissed on January 12, 2009, for failure to produce transcripts of the court hearing below.

Under the terms of the Contract, the plaintiffs were obligated to pay the defendants $25,000.00 toward the purchase of the property, and they agreed to make monthly payments toward the purchase price in the amount of $2,612.44 until August 1, 2013, at which time the entire balance of principal and interest would be due and payable in full. The Contract further stated that after the plaintiffs made timely payments for five years, or on August 1, 2008, the defendants would convey the property to them by a general warranty deed, subject to the deed of trust in favor of Sun Trust Bank. Additionally, when the plaintiffs entered into the Contract, the property was encumbered by a lease in favor of Dairy Partners, LLC, in the amount of $2,000.00 per month, which expired at the end of February 2004. Thereafter, the plaintiffs entered into another lease agreement with Dairy Partners, LLC, in the amount of $2,250.00 per month, which ran from March 1, 2004, through the end of February 2006. The plaintiffs allege that the rental payments from Dairy Partners were made to the defendants instead of the plaintiffs. However, I note that the Contract specified that "as long as all payments under this Land Sales Contract are

-3-

current, all rentals under said lease shall be made to the Buyer."

The "Default" section of the Contract specifies that if the buyers defaulted in making payments or fulfilling any obligations under the Contract, the seller may opt either to bring an action for specific performance of the Contract or treat the interest of the buyers as forfeited. It further specifies that, in the event of forfeiture, the Contract will terminate and the buyers will forfeit any and all rights and interests under the Contract and to the property and any appurtenances. It further states that the buyers will surrender the property to the sellers and will forfeit to the sellers as liquidated damages any and all payments made under the Contract, together with any and all improvements placed on or in the property. The Contract states that this default provision was specifically bargained for by the parties. The Contract provides that if the sellers elect for forfeiture, they must notify the buyers of such election, and thereafter, the Quitclaim Deed, executed by the parties on July 11, 2003, will be recorded.

In their Complaint, the plaintiffs seek to recover the $25,000.00 down payment, $75,535.00 in monthly payments applied toward the purchase price, $55,500.00 for the lease with Dairy Partners and $200,000.00 for the profit made by the defendants from their subsequent sale of the property.

## II. Analysis

Although the defendants filed a Motion to Dismiss the plaintiffs' action, matters outside the pleadings have been submitted by the plaintiffs and have been considered by the court. That being the case, the defendants' Motion to Dismiss shall be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *See* FED. R. CIV. P. 12(d). The parties have been notified of such and allowed to provide any affidavits or other evidence they wished the court to consider, which the parties now have done.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Therefore, in reviewing the defendants' motion for summary judgment, the court must view the facts and inferences in the light most favorable to the plaintiffs. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving

party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). Moreover, Rule 56(c) requires a court to enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an essential element of that party's claim. *See Celotex Corp.*, 477 U.S. at 322. The court also is mindful of the plaintiffs' status as pro se litigants. Bearing this in mind, their pleadings will be liberally construed in deciding the defendants' motion for summary judgment. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

In the case currently before the court, the defendants make several arguments, including that the plaintiffs' action is barred by the applicable statute of limitations, the action is barred by the doctrine of res judicata or, in the alternative, that this court lacks subject matter jurisdiction and/or that venue is improper. I first will discuss the defendants' statute of limitations argument before discussing the defendants' remaining arguments, if necessary.

It is well-settled that federal courts sitting in diversity, as here, must apply the choice of law provisions of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). Here, Virginia is the forum state. It further is well-settled in Virginia that the law of the place of the wrong or injury controls substantive issues, while the law of the forum controls procedural issues. *See Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 34 (Va. 1993). Therefore, I must first determine whether the statute of limitations is considered substantive or procedural under Virginia law. In *Commonwealth of Virginia v. Owens-Corning Fiberglas Corporation*, 385 S.E.2d 865, 867 (Va. 1989), the Virginia Supreme Court

distinguished among three types of statutes of limitations. The first is procedural or "pure" statutes of limitations, which are defined as serving merely to time-restrict the assertion of a remedy. *See Owens-Corning*, 385 S.E.2d at 867. These statutes of limitation furnish an affirmative defense and are waived if not pleaded. *See Owens-Corning*, 385 S.E.2d at 867. The second type is substantive or "special" statutes of limitations, which ordinarily are contained in statutes that create a new right and become elements of that newly created right, restricting its availability. *See Owens-Corning*, 385 S.E.2d at 867. Compliance with such a statute is a condition precedent to the maintenance of a claim. *See Owens-Corning*, 385 S.E.2d at 867 (citation omitted). The third type of statute of limitation is a statute of repose. *See Owens-Corning*, 385 S.E.2d at 867. The time limitation for such statutes begins to run from some legislatively selected point in time unrelated to the accrual of any cause or right of action, whether accrued or yet to accrue. *See Owens-Corning*, 385 S.E.2d at 867.

Pursuant to Virginia Code Annotated § 8.01-243(A), a cause of action for fraud shall be brought within two years after the action accrues. *See* VA. CODE ANN. § 8.01-243(A) (2007 Repl. Vol. & Supp. 2008). Thus, it is clear that it is not a statute of repose because the statute begins to run upon accrual. Moreover, it is not a special statute of limitation because § 8.01-243 does not create any new right. Thus, I find that the statute of limitations for fraud in Virginia is a pure statute of limitations because it serves merely to time-restrict the assertion of a remedy. That being the case, the statute of limitations at issue here is procedural. For that reason, this court must apply the law of the forum, Virginia, to determine whether the plaintiffs' action is time-barred. The plaintiffs argue that an action for fraud accrues when the fraud is discovered and, that being the case, their action, filed on February 3, 2009, is not time-

-7-

barred. The plaintiffs misconstrue the law. Under Virginia law, a claim for fraud accrues when the fraud is discovered *or, by the exercise of due diligence, reasonably should have been discovered.* *See* VA. CODE ANN. § 8.01-249(1) (2007 Repl. Vol.) (emphasis added). The Virginia Supreme Court has held that, in determining when fraud should have been discovered through the exercise of due diligence, the focus should be on the activity of a reasonably prudent person, as well as the specific facts of each case. *See STB Mktg. Corp. v. Zolfaghari*, 393 S.E.2d 394, 397 (Va. 1990). The plaintiffs' fraud claim centers around the inclusion of an incorrect property address in the Contract, the Quitclaim Deed and the closing documents. Thus, the court must determine when the plaintiffs should have discovered this. The plaintiffs contend that they were unaware of the incorrect address in the Contract, Quitclaim Deed and closing documents until February 9, 2007, following the January 12, 2007, order awarding damages to the defendants. The court is aware of the possibility that the plaintiffs never actually read the Contract, Quitclaim Deed and/or closing documents, so that they did not know this discrepancy existed. However, if such is the case, this court will not reward such conduct. In any event, I find that the plaintiffs should have discovered, through the exercise of due diligence, the existence of the incorrect address prior to February 9, 2007.

First, there is no reason that the plaintiffs should not have known the correct address of the property being purchased at the time of the closing. Common sense dictates that such should be the case. Moreover, the incorrect address was contained not only in one document, but three – the Contract, the Quitclaim Deed and the

closing documents, all of which were signed by the plaintiffs.[4] However, even assuming that the plaintiffs did not know the correct address of the property purchased at the time of the closing, they have provided the court with evidence showing that they received a site map prepared by TH&P Engineers & Geologists on or about September 4, 2003. This site map indicates the address as being "Industrial Boulevard." (Exhibit I to Docket Item No. 18.) Thus, a reasonably prudent person should have discovered the address discrepancy at that time. That being the case, the plaintiffs' action would have had to have been filed by September 4, 2005. However, the current action was not initiated until February 3, 2009. At the very least, the plaintiffs should have discovered the address discrepancy through the exercise of due diligence when they actually took possession of and occupied the property. In his affidavit, defendant Paul David Bryant, Jr. states that a clearly visible street sign showing the location as "Industrial Blvd." was present at the time the plaintiffs entered into the Contract in 2003 and that the plaintiffs had to drive by this sign on their way to and from the property. (Docket Item No. 23, Exhibit A to Affidavit Of Paul David Bryant, Jr., ("Bryant Affidavit").) Moreover, in his affidavit, Bryant states that the glass door to the building at issue clearly indicated that the address was "2100 Industrial Blvd." (Exhibit B to Bryant Affidavit.) It is unclear from the information provided to the court when the plaintiffs first took occupancy. However, it is clear that the plaintiffs occupied the premises by September 20, 2004, because this is when the Quitclaim Deed was recorded, and the defendants informed the plaintiffs that they

---

[4]The court notes that plaintiff, Peter Demetriades, states that his wife and co-plaintiff, Michele Demetriades, was not present at the closing and that he signed her name to the Contract as her attorney-in-fact. The defendants dispute this contention, noting that all parties were present and signed the Contract. In any event, a copy of the Contract was thereafter mailed to the plaintiffs at their residence, at which time Michele Demetriades had ample opportunity to review it.

-9-

had to vacate the property. Even using this date as the first date of occupancy by which the plaintiffs reasonably should have known of the incorrect address, the action still is time-barred because the Complaint was filed on February 3, 2009, nearly four and one-half years after September 20, 2004.

For all of the foregoing reasons, I find that the plaintiffs had ample opportunity to reasonably discover the address discrepancy prior to February 9, 2007. In particular, I find that they should have done so, at the very latest, when they took possession of and occupied the property. Nonetheless, because the plaintiffs failed to initiate this action within two years of that time, it is barred by the statute of limitations.

The court notes that Virginia's five-year statute of limitations for actions brought pursuant to a written contract, found at § 8.01-246(2), does not apply to this case. The Virginia Supreme Court, in *House v. Kirby*, 355 S.E.2d 303, 306 (Va. 1987) (citing *Pigott v. Moran*, 341 S.E.2d 179, 182 (Va. 1986) & *Jefferson Standard Ins. Co. v. Hedrick*, 27 S.E.2d 198, 202 (Va. 1943)), held that "[f]raud . . . is purely a tort. . . ." It further held that "[t]he duty to refrain from fraudulent acts is imposed by tort law, not by any contract between the parties." *House*, 335 S.E.2d at 306. It explained that "[t]he character of fraud is not changed from tort to contract merely because the parties are also engaged in a contractual relationship." *House*, 335 S.E.2d at 306. That being the case, I find that the five-year statute of limitations for claims brought pursuant to written contracts does not apply to the plaintiffs' fraud claim.

For all of the foregoing reasons, I find that no genuine issue of material fact

-10-

exists with regard to the statute of limitations issue. I further find that the plaintiffs' action is barred by the applicable statute of limitations period for fraud claims. Given this disposition, I find it unnecessary to discuss the defendants' remaining arguments.

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations.

1. There is no genuine issue of any material fact with regard to the statute of limitations issue;
2. The parties entered into a contract for the sale of a commercial building and land on July 11, 2003;
3. The plaintiffs intended to purchase property located at 2100 Industrial Boulevard, Bristol, TN 37620;
4. The Contract, Quitclaim Deed and closing documents contained an incorrect address of 2100 Industrial Park Drive, Bristol, TN 37620;
5. The plaintiffs are suing the defendants for fraud based on this discrepancy;
6. Because this court is sitting in diversity, it must apply Virginia's choice of law provisions;
7. In Virginia, the law of the place of the wrong controls substantive issues, while the law of the forum controls procedural issues;
8. Because the Virginia statute of limitations provision for fraud is a procedural statute of limitations, it applies in this case;

-11-

9. Virginia Code Annotated § 8.01-243(A) prescribes a two-year limitations period after the accrual of a fraud claim;
10. Virginia Code Annotated § 8.01-249(1) specifies that a fraud claim accrues when it is discovered, or reasonably should have been discovered, by the exercise of due diligence;
11. Giving the plaintiffs every benefit of the doubt, their claim for fraud accrued, at the very latest, on September 20, 2004; and
12. Thus, the plaintiffs' Complaint filed on February 3, 2009, more than four and one-half years later, is time-barred.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the motion for summary judgment and dismiss the plaintiffs' action against the defendants with prejudice.

## **Notice To Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to

recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in the matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and all unrepresented parties.

DATED: This 26th day of May 2009.

/s/ *Pamela Meade Sargent*
United States Magistrate Judge